**Kenneth Bradley MORE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. A14–83–837–CR.**

Court of Appeals of Texas, Houston (14th Dist.)

May 23, 1985.

Catherine Greene Burnett, Houston, for appellant.

John B. Holmes, Dist. Atty., Eleanor Montague McCarthy, Asst. Dist. Atty., Houston, for appellee.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

## OPINION

ELLIS, Justice.

This is an appeal from the judgment of conviction for the felony offense of capital murder. The jury found appellant guilty and assessed his punishment at confinement for life in the Texas Department of Corrections. We affirm.

Appellant, Kenneth Bradley More, raises six grounds of error on appeal. Appellant's first ground of error asserts that the trial court erred in denying appellant's motion to dismiss for the State's failure to comply with TEX.CODE CRIM.PRO.ANN.

art. 32A.02 (Vernon Supp.1985) (The Speedy Trial Act) because the State failed to show due diligence to obtain appellant's presence for trial. In his second ground of error, appellant argues that the trial court erred in overruling his motion for directed verdict as to the capital aspect of the case based on exculpatory material introduced by the State and not disproved by it. Ground of error three asserts that the evidence is insufficient to support a conviction for capital murder upon the jury's finding that death was caused by choking and strangling. Appellant argues in ground of error four that the trial court erred in failing to charge the jury on the lesser included offense of robbery. He asserts in ground of error five that the trial court erred in failing to submit a jury instruction on causation. In his last ground of error he argues that the trial court erred in admitting the autopsy report over appellant's objection.

On April 3, 1981, the body of the deceased, Lawrence Steven Pearson, was found in his garage apartment in Houston, Texas. When his body was found, it had a cord wrapped twice around his neck. His apartment had been ransacked and his car was missing.

Several witnesses testified that they saw appellant with the deceased several times during the week before the murder. On April 20, 1981, a Florida State Trooper observed appellant driving the deceased's car in Martin County, Florida, and ran a check on the car. When the check revealed the car was a stolen vehicle belonging to a murder victim, appellant was stopped and arrested. Appellant subsequently signed a written confession to the crime.

The police obtained a search warrant to search the deceased's car. Their search revealed, among other things, Pearson's checkbook, his wallet, and some of his jewelry. A search of appellant's person revealed a pawn ticket.

The medical examiner testified that he performed an autopsy on the deceased and found that the deceased received a blunt laceration to the head, abrasions to his legs, and pressure grooves around the neck. The medical examiner observed that a cord has been wrapped twice around complainant's neck. He testified that the cause of death was strangulation and skull fracture. He testified that either cause could have independently produced death.

In his first ground of error appellant contends that the State failed to meet its burden of proof on whether it exercised due diligence to obtain appellant's presence for trial. He argues that his motion to dismiss should have been granted since more than 120 days elapsed from the commencement of the allotted time under the Speedy Trial Act. We disagree.

On April 20, 1981, the Houston Police Department received a teletype from Florida Highway Police informing them that appellant had been arrested that day driving Pearson's car in Martin County, Florida. A complaint was filed in Harris County, Texas, on April 21, 1981, charging appellant with the capital murder of Pearson. Houston police officers went to Florida on April 28, 1981, with an arrest warrant for appellant.

In Florida, they learned that appellant would be released to Nevada authorities who had a prior murder warrant for appellant's arrest. The Houston officers returned without appellant. In April, 1981, a "hold" for Harris County was placed on appellant while he was in custody in Las Vegas, Nevada. This "hold" was placed on appellant by the Harris County Sheriff's Office for the capital murder warrant in this case.

At the speedy trial hearing, Thomas Royce, the Harris County prosecutor initially assigned to this case, testified that he first contacted the Las Vegas District Attorney's office on April 22, 1981, the day the Texas warrant was issued. He stated that from that day he was in continual contact with the Las Vegas District Attorney for the purpose of securing appellant's presence at trial in Harris County. The Las Vegas authorities told Royce that appellant would not be released to Texas authorities until the Nevada case was tried.

Royce estimated that between April 22, 1981, and May 19, 1982, he called Nevada authorities approximately 20 times to check on the status of appellant's case. On May 19, 1982, Royce learned that a Nevada court sentenced appellant on May 15, 1982, to 30 years for second degree murder and that appellant was available for the Harris County trial. Royce filed a detainer pursuant to the Interstate Agreement on Detainers, TEX.CODE CRIM.PRO.ANN. art. 51.-14 (Vernon 1979). Royce and his successor, George Godwin, were told that the Interstate Agreement would not be honored for the following reasons: (1) A defect existed in the paperwork; (2) A Nevada judge questioned the constitutionality of the detainer statute; (3) appellant refused to sign the papers and was resisting his return to Texas to stand trial.

In September, 1982, Nevada authorities told Godwin that the paperwork filed by Mr. Royce was in order, but they needed an identification affidavit to complete the procedure. Sometime in January, 1983, a photograph of appellant was received from Florida. The affidavit was sent to Nevada in February, 1983, and about thirty days later, in March, 1983, appellant was transported to Harris County, Texas.

Royce testified that the State had been ready to try the case within the time period set forth in the Speedy Trial Act except for the absence of appellant. We find that the State exercised due diligence in its attempt to secure appellant's presence for trial and that the period of delay caused by the Nevada proceeding involving appellant was reasonable and is excluded under the Speedy Trial Act.

TEX.CODE CRIM.PRO.ANN. art. 32A.02 § 1(1) (Vernon Supp.1985) provides:

> A court shall grant a motion to set aside an indictment ... if the State is not ready for trial within ... 120 days of the commencement of a criminal action....

Section 2(a) of the statute further provides that a criminal action "commences", for the purposes of the Speedy Trial Act, when an indictment or complaint is filed in court, unless the defendant has been arrested at an earlier time for the same offense or another offense arising out of the same transaction, in which event the criminal action commences with the arrest.

■ We must look at what constitutes readiness for trial on the part of the State. It is not necessary that a defendant actually be put on trial within 120 days of the commencement of a felony action against him. *Fraire v. State*, 588 S.W.2d 789, 791 (Tex.Crim.App.1979). The Speedy Trial Act requires that the prosecutor be ready for trial, rather than requiring that the court system as a whole be ready and able to give the defendant a trial on the evidence. *Barfield v. State*, 586 S.W.2d 538 (Tex.Crim.App.1979). The *Barfield* court also discussed the burden of proof:

> Section 3 [of the Act] ... would seem to require that the first move be made by the accused rather than the state.... Once the defendant files his motion to dismiss for failure to adhere to the provisions of the Act, the state must declare its readiness for trial then and at the times required by the Act. This declaration is a *prima facie* showing of conformity to the Act, but can be rebutted by evidence submitted by the defendant demonstrating that the state was not ready for trial during the Act's time limits.

■ The prima facie showing of readiness which flows from the State's announcement of ready may be rebutted by a showing that the appellant was absent during the time in which the State claimed to be ready. *Newton v. State*, 641 S.W.2d 530 (Tex.Crim.App.1982).

When the prima facie showing of readiness is rebutted, the State must show excludable time periods of delay that would extend the initial time limitation. *Phipps v. State*, 630 S.W.2d 942, 947 (Tex.Crim. App.1982).

In the instant case three subsections of TEX.CODE CRIM.PRO.ANN. art. 32A.02 § 4 (Vernon Supp.1985) would exclude the time that appellant spent in Nevada.

Subsections (1), (5), and (9) of art. 32A.02 § 4 of the Act provides that the following periods be excluded:

(1) a reasonable period of delay resulting from other proceedings involving the defendant, including but not limited to proceedings for the determination of competence to stand trial, hearing on pretrial motions, appeals, and trials of other charges

\* \* \* \* \* \*

(5) a period of delay resulting from the the unavailability of the defendant whose location is known to the state but whose presence cannot be obtained by due diligence or because he resists being returned to the state for trial

\* \* \* \* \* \*

(9) a period of delay resulting from detention of the defendant in another jurisdiction, if the state is aware of the detention and exercises due diligence to obtain his presence for trial ...

■ Section 4(1) of art. 32A.02 is couched in terms of reasonableness when looking at a period of delay. *Slaughter v. State*, 683 S.W.2d 746 (Tex.App.—Corpus Christi 1984). The determination of reasonable delay must be made on a case by case basis. *Parish v. State*, 632 S.W.2d 200, 202 (Tex.App.—Ft. Worth 1982, no pet.).

■ We find that the period of time when appellant was incarcerated in Nevada was a reasonable period of delay resulting from other proceedings involving appellant for purposes of trial on other charges. *Parish v. State*, 632 S.W.2d 200.

■ In addition, the State more than amply discharged its burden of showing that due diligence was used in an attempt to secure appellant's presence in Harris County under subsection (9). A Texas arrest warrant was issued two days after appellant's Florida arrest. Harris County officers went to Florida to escort appellant back, only to find out that Nevada officials had an earlier claim. The Harris County District Attorney's office remained in continual contact with Nevada authorities regarding the status of appellant's case. A detainer was filed as soon as it was learned that appellant was convicted in Nevada.

■ Subsection (5) of art. 32A.02 § 4 covers the period of delay caused by appellant's refusal to sign the detainer papers. In *Simonsen v. State*, 662 S.W.2d 607, 610 (Tex.App.—Houston [14th] 1983, no pet.), the District Attorney's office in one county called officials in another county to confirm that the appellant was being held there, and then requested that the appellant be put "on hold". The Court held that the evidence was sufficient to show that the State was aware of the appellant's detention in the other county and that it exercised due diligence to have him returned for trial. The Court held that the period of delay while the appellant was held in custody in another jurisdiction was not attributable to the State and should be excluded from the time calculations.

The period of delay resulting from appellant's detention in Nevada, from April 28, 1981, until March, 1983, should be excluded in computing the time by which the State must be ready for trial. This period constituted both a reasonable delay resulting from other proceedings involving appellant, and a period of delay resulting from appellant's detention in another jurisdiction, when the State was aware of the detention and exercised due diligence to obtain his presence for trial. Further, the period of delay caused by Nevada's refusal to release appellant until a conviction was obtained and by appellant's subsequent refusal to sign the detainer papers should be excluded under § 4(5), which provides for exclusion of a "period of delay resulting from the unavailability of the defendant whose location is known to the State but whose presence cannot be obtained by due diligence or because he resists being returned to the State for trial." Appellant's first ground of error is overruled because the periods of delay fall within the excludable time periods permitted under art. 32A.02 § 4(1), (5), (9).

In his second ground of error appellant asserts that the trial court erred in overruling appellant's motion for directed verdict as to the capital aspect of the case based on exculpatory material introduced by the State and not subsequently disproved. Specifically, appellant complains that the State offered appellant's written and oral statements which showed his lack of intent to cause Pearson's death at the time of his attack and that the statements were neither directly nor circumstantially rebutted.

Appellant's written confession and transcription of his oral statement were introduced into evidence by the State. The relevant portions of the written confession read:

> On the day I beat and choaked [sic] him ... I also realized I would have to do something with Larry [deceased] to keep him quiet at least for a while. I thought I would jump him and then tie him up and gag him ... When he [deceased] reached the top of the stairs I punched him in the head with my fist and he fell down the stairs to the bottom. When he fell he must have hit his head because he was bleeding steadily from his head after that. After he fell, I went to the bottom of the stairs, got a hold of him and dragged him upstairs ... When I got him upstairs ... I hit him again in the head with my fist. As he was going down I got behind him and got him in a hammerlock ... I got the extention [sic] cord from a telephone and wrapped it around his neck. I tried to chock [sic] him with it, but it didn't work too well so I just used it to hold him with and then put my arm back around his neck and squeezed. Eventually he stopped struggling and slumped over.

The transcription of the oral confession contained the following statements.

> I thought—the only way I could get out of there—was to take the stuff I wanted to take, with his car, and the only way I was gonna [sic] get his car was knock him out, tie him up and leave him there ...

I held him more or less with a chokehold, I was trying to get him to pass out, and he eventually did, and I just gathered up the stuff and took it all back downstairs ...

I remember I had him in a hold—something like this—and he was hollering my name over and over, and then he stopped fighting—and I let go of him—I figured he was knocked out—I got up and grabbed the bag ...

■ When a felony is committed by accident or mistake while in the course of intentionally committing another felony, the defendant is guilty of the felony actually committed. *Honea v. State*, 585 S.W.2d 681, 685 (Tex.Crim.App.1979); *Hilliard v. State*, 513 S.W.2d 28, 32 (Tex.Crim.App. 1974). The intent to commit the contemplated offense transfers to the offense actually committed. TEX.PENAL CODE ANN. § 6.04 (Vernon 1974); *Ex parte Easter*, 615 S.W.2d 719, 720 (Tex.Crim.App. 1981) (en banc), *cert. denied*, 405 U.S. 943, 102 S.Ct. 481, 70 L.Ed.2d 252 (1981); *Honea v. State*, 585 S.W.2d 681. Appellant's statements are not exculpatory and do not prove a lack of intent to kill.

■ The statements are not exculpatory since they fail to show that appellant was not guilty of the offense charged in the indictment. *Palafox v. State*, 608 S.W.2d 177, 181 (Tex.Crim.App.1979) (en banc). A statement is not exculpatory unless it amounts to an admission of guilt with an assertion which would exculpate or exonerate the accused. *Swink v. State*, 617 S.W.2d 203, 208 (Tex.Crim.App.1981), *cert. denied*, 454 U.S. 1087, 102 S.Ct. 648, 70 L.Ed.2d 624 (1981). "A statement is not exculpatory unless it exculpates." *Daniel v. State*, 668 S.W.2d 390, 393 (Tex.Crim. App.1984) (en banc).

In a similar case, *Moulton v. State*, 508 S.W.2d 833 (Tex.Crim.App.1974), the appellant was charged with murder with malice. The appellant's confession stated, "We were intending to grab him [deceased] and scare him long enough to get the keys and lock him in the cell, but he started yelling so we asked him not to yell, and we tried to

quiet him down to put him to sleep, evidently it did not work out that well." The Court noted that to be exculpatory, a statement must amount to an admission plus an assertion that would exculpate the accused, and held that the statement did not exculpate the accused and was not exculpatory. *Moulton v. State*, 508 S.W.2d at 835. Likewise, the statements in the instant case are not exculpatory as they do not clear or tend to clear appellant from guilt. *Davis v. State*, 501 S.W.2d 101, 103 (Tex.Crim.App. 1973). Appellant clearly intended to rob and assault the deceased. His acts resulted in the offense of capital murder and he is guilty of that offense. The evidence is sufficient to support appellant's conviction for capital murder. Ground of error two is overruled.

▇ Appellant's third ground of error asserts that the evidence is insufficient to support a capital murder conviction upon the jury's findings that death was caused by choking and strangling. Appellant argues that a fatal variance existed between the allegations in the indictment and the State's proof as to the cause of death.

The indictment alleged that appellant caused Pearson's death "by choking and strangling the complainant with his hands, his arms and a cord." The court's charge required the jury to find that appellant caused the complainant's death "by choking or strangling [the deceased] with his hands, his arms, or a cord ..."

At trial an assistant medical examiner, Edwardo Bellas, testified that in his opinion the deceased's death resulted from two mechanisms: strangulation and skull fracture. He said either mechanism was sufficient to independently produce death and he could not determine which mechanism occurred first. Bellas testified that the skull fracture was caused by a circular or semi-circular hammer type instrument. Although appellant never admitted hitting the complainant with a hammer, he did admit in his written confession that he hit the deceased with his fist which caused the deceased to fall down the stairs. Dr. Bellas testified that it was impossible to determine whether the strangulation or the skull fracture occurred first. He also said that the skull fracture was caused by a circular or semi-circular hammer-type instrument.

In *Wicker v. State*, 667 S.W.2d 137 (Tex. Crim.App.1984) (en banc), the indictment alleged that the appellant caused the death of the deceased by choking her with his hands and burying her alive. The medical examiner testified the death could have been caused by the manner alleged in the indictment, but it could have also been caused by choking *or* drowning in shallow sandy water. The appellant's confession admitted choking and burying her in a shallow grave. On appeal, the Court of Criminal Appeals held that the expert testimony combined with appellant's confession established that the evidence was sufficient to affirm the conviction. In *Jones v. State*, 644 S.W.2d 530 (Tex.App.—Corpus Christi 1982, no pet.), appellant argued that there was a fatal variance between the indictment allegation and the proof. Although the indictment alleged death by kicking the complainant's head and by striking the complainant's head against a concrete sidewalk, the medical examiner testified that the death was caused by a combination of strangulation and head trauma. The *Jones* court noted that if the appellant's act contributed to the death, the appellant would be responsible even though there were other contributing causes. The court held that the State was not required to prove beyond a reasonable doubt that the alleged act alone caused the death and that the evidence was sufficient to support the conviction. *Jones v. State*, 644 S.W.2d at 531–32.

After reviewing the evidence in the instant case, we find that the evidence is sufficient to support the jury's finding that Pearson's death was caused by choking and strangling. Ground of error three is overruled.

Appellant, in his fourth ground of error, argues that the trial court improperly refused to charge the jury on the lesser included offense of robbery. We disagree.

In determining whether a charge on a lesser included offense is required, a two step analysis is used. First, the lesser included offense must be included within the proof necessary to establish the offense charged. Second, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser included offense. *Royster v. State*, 622 S.W.2d 442, 446 (Tex.Crim.App.1981).

To hold that robbery was a lesser included offense of capital murder simply because it was incumbent upon the State to prove the elements of robbery in establishing capital murder would be an impermissibly broad extension of the law governing lesser included offenses. *Woodkins v. State*, 542 S.W.2d 855, 858 (Tex.Crim.App. 1976). Whether an offense is a lesser included offense of the offense charged is to be determined on a case by case basis. *Broussard v. State*, 642 S.W.2d 171, 173 (Tex.Crim.App.1982) (en banc).

In this case, only the first part of the *Royster* test is satisfied. The lesser offense of robbery is included within the proof necessary to establish capital murder. However, as for the second part of the test, no evidence was presented which showed that if appellant is guilty, he is only guilty of the lesser included offense of robbery. In the instant case, appellant did not testify and offered no evidence. Appellant relies on his confession introduced at trial in an attempt to show that the evidence presented at trial indicated that he was only guilty of robbery, if guilty at all. Appellant's confession never denied an intent to kill the complainant. Although appellant did not specifically confess to his intent to kill the victim, the thought processes and actions described in the confession do not negate such an intent. Accordingly, we overrule this ground of error.

In his next ground of error, appellant again complains of the jury charge. Specifically, he alleges that the trial court erred in failing to submit a jury instruction on causation because the jury was never told that it had to find that death was caused by strangulation and not caused by the blow to the head which preceeded the final choking.

Appellant's assertion that the trial court did not charge the jury that it must find that the deceased met his death by strangulation rather than skull fracture is without merit. The instructions given to the jury, in pertinent part, provide:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 3rd day of April, 1981, in Harris County, Texas, the defendant, Kenneth Bradley More, while in the course of committing or attempting to commit the robbery of Lawrence Steven Pearson, did intentionally *cause the death of Lawrence Steven Pearson by choking or strangling the said Lawrence Steven Pearson with his hands, his arms, or a cord*, then you will find the defendant guilty of capital murder.

(Emphasis ours). The charge given by the trial court specifically required the jury to find that death was caused by choking or strangling. The instruction given adequately protected appellant on the issue of cause of death. *Sheppard v. State*, 545 S.W.2d 816 (Tex.Crim.App.1977).

The State is not required to prove beyond a reasonable doubt that the act alleged in the indictment *alone* caused the death. *Jones v. State*, 644 S.W.2d 530, 532 (Tex.App.—Corpus Christi, 1982, no pet.). It is an established rule in homicides that if the act of the defendant alleged in the indictment contributed to the death of the deceased, he is responsible, though other contributing causes existed. *Jones v. State*, 644 S.W.2d at 531–32; *Wright v. State*, 388 S.W.2d 703, 706 (Tex.Crim.App. 1965).

Further, an instruction on causation was not proven in this situation. The evidence did not raise the issue of causation because there was a causal connection in choking and strangling and the death of the deceased. *Daniel v. State*, 577 S.W.2d 231, 236 (Tex.Crim.App.1979). Because the conduct alleged in the indictment was clearly sufficient to produce the result, the trial

court did not err in refusing to charge the jury on causation. We overrule appellant's fifth ground of error.

In his final ground of error, appellant argues that the trial court erred in admitting the autopsy report into evidence over appellant's objection. He argues that the admission of the report constituted improper bolstering of the medical examiner's testimony. We disagree and find that the report was properly admissible.

Autopsy reports are admissible in criminal cases under TEX.REV.CIV. STAT.ANN. art. 3737e (Vernon Supp.1985) (The Texas Business Records Act); *Burleson v. State*, 585 S.W.2d 711, 712 (Tex. Crim.App.1979). If a witness is qualified under art. 3737e § 2, and testifies to facts satisfying the requirements of art. 3737e § 1, the record, so far as relevant, may be admitted into evidence. *Lumpkin v. State*, 524 S.W.2d 302, 304 (Tex.Crim.App.1975). The autopsy report was properly admitted in evidence. *Burleson v. State*, 585 S.W.2d at 711.

Further, the introduction of the autopsy report could not have been harmful to appellant. *Price v. State*, 496 S.W.2d 103, 107 (Tex.Crim.App.1973); *Roddy v. State*, 494 S.W.2d 174, 176 (Tex.Crim.App.1973). In view of the overwhelming evidence of appellant's guilt and the life sentence assessed, there is no reasonable possibility that the admission of the autopsy report might have contributed to the conviction or affected the punishment assessed. *Johnson v. State*, 660 S.W.2d 536 (Tex.Crim. App.1983) (en banc). No harm is shown. Ground of error six is overruled.

Accordingly, the judgment of the trial court is affirmed.