Bobby Lee Biffel v. The State of Texas






COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-01-478-CR
 
BOBBY LEE BIFFEL
                                                           APPELLANT
V.
THE STATE OF TEXAS
                                                           STATE
------------
FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
------------
OPINION
------------
I. Introduction
A jury convicted Appellant Bobby Lee Biffel ("Biffel") of murder
and assessed his punishment at 48 years' confinement. In five points, Biffel
challenges the legal sufficiency of the evidence to support his conviction,
alleges that the trial court committed reversible error in the jury charge, and
complains that he was denied effective assistance of counsel. We will affirm.
II. Background Facts
Biffel and Johnny Ochoa, the victim, were engaged in a long-standing
homosexual relationship. On the evening of October 17, 1998, Biffel and his
sixteen year-old brother, Jerry, went to Ochoa's home. As Jerry played a video
game, Biffel and Ochoa went to Ochoa's bedroom. Biffel returned fifteen to
twenty minutes later without Ochoa and told Jerry they had to go. As they left,
Jerry noticed stains that could have been blood on Biffel's shirt. Jerry
testified that he did not know why they had to leave and that he thought it was
unusual that he did not have a chance to say goodbye to Ochoa.
Two days later, on October 19th, family members who had begun
searching for Ochoa found him dead in his bedroom. Ochoa was laying face up,
clad only in a pair of boxer shorts, and his face was covered with another pair
of bloody men's boxer shorts. The dried blood on the shorts suggested that they
had been there for some time. A substantial amount of blood surrounded Ochoa's
body, and some blood was spattered on the wall. The doors and windows of Ochoa's
residence were locked, and no signs of forced entry existed. No murder weapon
was recovered.
The medical examiner opined that Ochoa had been dead a minimum of eighteen to
twenty-four hours and possibly as long as two and one-half days. The primary
cause of Ochoa's death was trauma from multiple blunt-force injuries to the
head, but a stab wound to Ochoa's neck contributed to his death. When Jerry
learned of Ochoa's death, he asked Biffel if he had anything to do with Ochoa's
demise. Biffel responded "yeah" and admitted that he had hit Ochoa.
Evidence established the existence of prior physical altercations between Biffel
and Ochoa, some requiring police intervention. Following one of these
disturbances, Biffel told police that he thought Ochoa might "have a
fixation on him." Following a different disturbance, Biffel mentioned to
police that while he wanted to keep his relationship with Ochoa a secret, Ochoa
did not share his desire for secrecy.
III. Legal Sufficiency
A. Standard of Review
In reviewing the legal sufficiency of the evidence to support a conviction,
we view all the evidence in the light most favorable to the verdict in order to
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Burden v. State, 55 S.W.3d
608, 612 (Tex. Crim. App. 2001). This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789. When
performing a legal sufficiency review, we may not sit as a thirteenth juror,
re-evaluating the weight and credibility of the evidence and, thus, substituting
our judgment for that of the fact finder. Dewberry v. State, 4 S.W.3d
735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).
B. Point One
In his first point, Biffel complains that the evidence as to paragraph three
of the indictment is legally insufficient to authorize a conviction for murder.
Paragraph three of the indictment reads:

 Paragraph Three: And it is further presented in and to said court that the
 said defendant in the County of Tarrant and State aforesaid on or about the 17th
 Day of October, 1998, did then and there intentionally, with the intent to
 cause serious bodily injury to Johnny Ochoa, commit an act clearly dangerous
 to human life, namely, by cutting or stabbing Johnny Ochoa with a deadly
 weapon, to-wit: a knife, that in the manner of its use or intended use was
 capable of causing death or serious bodily injury, which caused the death of
 Johnny Ochoa.

Biffel argues that the evidence presented foreclosed the possibility that
Ochoa's death resulted from a stab wound, as alleged. Biffel bases this
assertion on an answer given by the medical examiner during the State's
case-in-chief. When asked whether a blunt-force trauma to Ochoa's head could
have caused his death, the medical examiner responded in the affirmative. The
medical examiner also testified, however, that the neck wound was capable of
causing Ochoa's death. Finally, he explained, "We have a primary cause and
contributing cause of death" those being the cerebral trauma and the stab
wound, respectively.
An individual is responsible for a death if his or her actions contributed to
the death in some manner. More v. State, 692 S.W.2d 912, 919 (Tex.
App.--Houston [14th Dist.] 1985, pet. ref'd). This is so even if
there were additional contributing causes. Id.; see Tex. Penal
Code Ann. § 6.04(a) (Vernon 2003). It follows that the State is not required to
prove beyond a reasonable doubt that the alleged act alone caused the death. More,
692 S.W.2d at 919.
Here, the jury could have found the essential elements of the crime beyond a
reasonable doubt because there was some evidence that the stab wound to Ochoa's
neck was a contributing cause of his death and was possibly fatal even absent
the blunt-force injuries to Ochoa's head. See More, 692 S.W.2d
at 619; Tex. Penal Code Ann. § 6.04(a). Thus, viewing the evidence in the light
most favorable to the verdict, we hold that the evidence as to paragraph three
of the indictment is legally sufficient to authorize Biffel's conviction for
murder. We overrule Biffel's first point.
C. Point Two
In his second point, Biffel complains that the evidence as to paragraph four
of the indictment is legally insufficient to authorize his conviction for
murder. Specifically, Biffel claims the State failed to present evidence that
the grand jury used due diligence to ascertain the manner or means used to
commit the murder. Therefore he argues that the evidence is legally insufficient
to show that he "[struck] Johnny Ochoa with an object unknown to the grand
jury" as alleged in paragraph four of the indictment.
When an indictment alleges that the manner or means utilized to inflict an
injury is unknown and the evidence at trial does not show what type of object
was used, a prima facie showing exists that the object was unknown to the grand
jury. Matson v. State, 819 S.W.2d 839, 847 (Tex. Crim. App. 1991). If,
however, evidence at trial shows what object was used to inflict the injury, an
issue is raised with respect to whether the grand jury had information, when it
handed down the indictment, as to the object used. Id. Only in such a
case must the State prove that the grand jury did not know the manner or means
of inflicting injury and that the grand jury used due diligence in its attempts
to ascertain the manner or means. Id.
Paragraph four of the indictment reads:

 Paragraph Four: And it is further presented in an to said court that the
 said defendant in the County of Tarrant and State aforesaid on or about the 17th
 day of October, 1998, did then and there intentionally, with the intent to
 cause serious bodily injury to Johnny Ochoa, commit an act clearly dangerous
 to human life, namely, by striking Johnny Ochoa with an object unknown to the
 grand jury, that in the manner of its use or intended use was capable of
 causing death or serious bodily injury, which caused the death of Johnny
 Ochoa.

Biffel contends the following testimony by the medical examiner and the
homicide detective shows the identity of the object so that the State was put to
its burden of proving that the grand jury did not know the manner or means of
inflicting injury and that the grand jury used due diligence in its attempts to
ascertain the manner or means. The medical examiner testified:

         Q. [Prosecutor] When you
 performed this autopsy on October 19th, '98 -- October 20th,
 I'm sorry, did you have any idea what this object was other than the
 description you've just given the Grand Jury (sic)? I'm sorry the jury.
         A. [Krause] I had a most likely
 -- most likely object that I would be looking for, yes. I mean I had some idea
 of what the investigators might be seeking.

The homicide detective testified:

         Q. [Prosecutor] And you didn't
 find any type of a weapon that could have been used to inflict the blunt-force
 trauma injuries to Mr. Ochoa, did you?
         A. [Brannan] We searched -- I
 have my opinion about what may have been the weapon, but no, sir, I cannot say
 as for a fact what was the weapon.

Here, we need not determine whether the grand jury exercised due diligence in
ascertaining the manner or means used to inflict Ochoa's blunt-force injuries
because the evidence at trial failed to show the identity of the object
utilized. The medical examiner's testimony that he had an idea of the type of
object investigators might be seeking does not identify the object. See,
e.g., Armstrong v. State, 958 S.W.2d 278, 283 (Tex. App.--Amarillo 1997,
pet. ref'd) (holding that "while some evidence in this case indicates the
death weapon could have been a knife, we find after reviewing the testimony in
its context, the exact type of blade causing the wounds could only be determined
by speculation. Therefore, we conclude, . . . the State did not have to prove
due diligence on the part of the Grand Jury."); McIntosh v.
State, 855 S.W.2d 753, 766 (Tex. App.--Dallas 1993, pet. ref'd) (op. on
reh'g) (concluding that, "while the murder weapon could have been a
knife," and evidence was presented that showed decedent died of multiple
stab wounds, "the exact description of the instrument was unknown" at
trial). The closest the evidence comes to identifying the unknown object is the
medical examiner's testimony, based on the nature and shape of the abrasions and
skull fractures Ochoa suffered, describing the object as "a heavy cylinder
that [sic] probably with a metal rectangular face with these little grooves like
a gripping machine." This testimony, however, also falls short of
sufficiently identifying the object so that the State is put to the burden of
proving that the grand jury did not know the manner or means of inflicting
injury and that the grand jury used due diligence in its attempts to ascertain
the manner or means. See, e.g., Armstrong, 958 S.W.2d at 283; McIntosh,
855 S.W.2d at 766. Thus, viewing the evidence in the light most favorable to the
verdict, we hold that the evidence is legally sufficient to support Biffel's
conviction for murder by striking Ochoa with an unknown object, as alleged in
paragraph four of the indictment. Accordingly, we overrule Biffel's second
point.
D. Point Three
In his third point, Biffel asserts that the evidence as a whole is legally
insufficient to support the conviction. He outlines a number of facts
purportedly supporting his position, including that Jerry Biffel thought Ochoa
was still alive when he and Biffel left Ochoa's house on October 17th,
and that Jerry heard no struggle although only a curtain separated Ochoa's
bedroom from the area where Jerry was playing a video game.
We agree that these facts support Biffel's position; however, many other
facts support the jury's verdict. Some of the more significant facts include the
following: Biffel and Ochoa were engaged in a sexual relationship; prior
physical altercations had occurred between Biffel and Ochoa, necessitating
police intervention; Biffel told police Ochoa "had a fixation" on him;
Biffel and Jerry were the last people to see Ochoa alive; Jerry saw stains that
could have been blood on Biffel's shirt when they left Ochoa's house; when Jerry
asked Biffel whether he had anything to do with Ochoa's death, Biffel responded,
"yeah"; and the medical examiner's testimony concerning the time of
death is consistent with Ochoa having been murdered on October 17th
when Jerry and Biffel were at his house. Viewing the evidence in the light most
favorable to the verdict, we hold that a rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt. Jackson, 443
U.S. at 319, 99 S. Ct. at 2789; Burden, 55 S.W.3d at 612. We overrule
Biffel's third point.
IV. Jury Charge Error
A. Standard of Review
In his fourth point, Biffel alleges that the application paragraph of the
trial court's charge was fundamentally erroneous. Appellant lodged no objection
to this alleged error in the court's charge, so even assuming error, we will
reverse only if the error was so egregious and created such harm that Biffel was
deprived of a fair and impartial trial--in short, if the error constituted
"egregious harm." Almanza v. State, 686 S.W.2d 157, 171 (Tex.
Crim. App. 1985) (op. on reh'g); see also Tex. Code Crim. Proc. Ann.
art. 36.19 (Vernon 1981); Hutch v. State, 922 S.W.2d 166, 171 (Tex.
Crim. App. 1996).
In making this determination, "the actual degree of harm must be assayed
in light of the entire jury charge, the state of the evidence, including the
contested issues and weight of probative evidence, the argument of counsel and
any other relevant information revealed by the record of the trial as a
whole." Almanza, 686 S.W.2d at 171; see generally Hutch,
922 S.W.2d at 172-74. The purpose of this review is to illuminate the actual,
not just theoretical, harm to the accused. Almanza, 686 S.W.2d at 174.
Egregious harm is a difficult standard to prove and must be determined on a
case-by-case basis. Ellison v. State, 86 S.W.3d 226, 227 (Tex. Crim.
App. 2002); Hutch, 922 S.W.2d at 171.
B. Biffel Did Not Suffer Egregious Harm
Biffel contends that the charge's application paragraph is erroneous because
it is unclear whether the charges alleged in paragraphs three and four of the
indictment were submitted disjunctively or conjunctively. Specifically, Biffel
challenges the following language in the charge:

         Now if you find from the
 evidence beyond a reasonable doubt that on or about the 17th day of
 October, 1998, in Tarrant County, Texas, the defendant, Bobby Lee Biffel, did
 then and there intentionally, with the intent to cause serious bodily injury
 to Johnny Ochoa, commit an act clearly dangerous to human life, namely, by
 cutting or stabbing Johnny Ochoa with a deadly weapon, to-wit: a knife, that
 in the manner of its use or intended use was capable of causing death or
 serious bodily injury, which caused the death of Johnny Ochoa; or
 if you further find from the evidence beyond a reasonable doubt
 that on or about the 17th day of October, 1998, in Tarrant County,
 Texas, the defendant, Bobby Lee Biffel, did then and there intentionally, with
 the intent to cause serious bodily injury to Johnny Ochoa, commit an act
 clearly dangerous to human life, namely, by striking Johnny Ochoa with an
 object unknown to the grand jury, that in the manner of its use or intended
 use was capable of causing death or serious bodily injury, which caused the
 death of Johnny Ochoa, then you will find the defendant guilty of murder, as
 charged in the indictment. [Emphasis added.]

Biffel first questions whether the submission is disjunctive. While the
wording "or if you further find" did complicate matters somewhat, it
is clear that the two theories were submitted disjunctively because of the use
of the word "or." See Carrion v. State, 802 S.W.2d 83, 90
(Tex. App.--Austin 1990, no pet.) (mentioning that it is not error for the trial
court to charge the jury by the disjunctive "or," rather than by the
conjunctive "and" in certain situations). "Or" means a
choice between two alternatives and should not be ignored simply because it has
been followed with "if you further find." In examining the phrase, it
appears that the alleged error could have been avoided by excluding the word
"further." We conclude that a disjunctive interpretation of the charge
is proper.
Next, assuming this submission was disjunctive, Biffel questions which theory
the jury based its decision on and concludes that "[i]t is impossible to
tell." Biffel contends that reversal is required because it is not clear
which theory of murder formed the basis for the jury's general guilty verdict.
Biffel cites Ex Parte Drinkert, 821 S.W.2d 953 (Tex. Crim. App. 1991). Drinkert
held that when a jury charge contains alternative theories of liability, one of
which is invalid, and when it is impossible to tell which theory the jury relied
upon to convict, then the court will not assume that the jury relied on the
valid theory. Drinkert, 821 S.W.2d at 955. Here, however, unlike Drinkert,
both of the theories submitted to the jury are valid. We have held that the
evidence is legally sufficient to support Biffel's conviction under either
paragraph three or four of the indictment. The jury here could properly rely on
either theory to convict Biffel. Drinkert is therefore inapplicable.
In the alternative, Biffel contends the application paragraph charged the
jury in the conjunctive--requiring the jury to find he murdered Ochoa both by
stabbing him with a knife and by striking him with an object unknown to the
Grand Jury. Biffel argues that Ochoa could not be murdered twice, so the jury
could not have found him guilty under the application charge given. The State
points out, however, that if the charge can be construed conjunctively, it increased
the State's burden. Accordingly, the State argues that Biffel was not
egregiously harmed by the purported conjunctive submission because it increased
the State's burden. Cf. Robbins v. State, 716 S.W.2d 117, 118 (Tex.
App.--El Paso 1986, no pet.) (holding that an instruction which lowered the
State's burden of proof constituted reversible error). The State contends that
Biffel can be, and was under a conjunctive interpretation of the application
charge, charged and convicted of murdering Ochoa by two different manner and
means.
Applying the Almanza egregious harm standard, we cannot conclude
that the error in the application paragraph of the court's charge, if any,
affected the "very basis of the case" or that Biffel failed to receive
a fair and impartial trial. See Batiste v. State, 73 S.W.3d 402, 407
(Tex. App.--Dallas 2002, no pet.). This present situation is not analogous to
nor does it compare in severity to other charge problems, such as where an
incorrect statement of the law is given or an omission exists. See, e.g.,
Guillory v. State, 956 S.W.2d 135, 137 (Tex. App.--Beaumont 1997, no
pet.) (holding that an incorrect statement of the law, while error, did not
amount to egregious harm); Simms v. State, 905 S.W.2d 720, 724 (Tex.
App.--Texarkana 1995, no pet.) (concluding that, even though it was error not to
include an alternative correctional facility in the charge, appellant
nevertheless suffered no egregious harm resulting from such error). Having
determined that the error, if any, in the application paragraph of the charge
does not meet Almanza's egregious harm standard, we overrule Biffel's
fourth point.
V. Ineffective Assistance of Counsel
A. Standard of Review
In his fifth point, Biffel complains he was deprived of effective assistance
of counsel. We apply a two-pronged test to ineffective assistance of counsel
claims. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052,
2064 (1984); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App.
1999). First, appellant must show that his counsel's performance was deficient;
second, appellant must show the deficient performance prejudiced the defense. Strickland,
466 U.S. at 687, 104 S. Ct. at 2064.
In evaluating the effectiveness of counsel under the first prong, we look to
the totality of the representation and the particular circumstances of each
case. Thompson, 9 S.W.3d at 813. The issue is whether counsel's
assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error. Strickland, 466
U.S. at 688-89, 104 S. Ct. at 2065. "[C]ounsel is strongly presumed to have
rendered adequate assistance and made all significant decisions in the exercise
of reasonable professional judgment." Id. at 690, 104 S. Ct. at
2066. An allegation of ineffective assistance must be firmly founded in the
record, and the record must affirmatively demonstrate the alleged
ineffectiveness. Thompson, 9 S.W.3d at 814. Our scrutiny of counsel's
performance must be highly deferential, and every effort must be made to
eliminate the distorting effects of hindsight. Strickland, 466 U.S. at
689, 104 S. Ct. at 2065.
The second prong of Strickland requires a showing that counsel's
errors were so serious that they deprived the defendant of a fair trial, i.e., a
trial whose result is reliable. Id. at 687, 104 S. Ct. at 2064. In
other words, appellant must show there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding would have been
different. Id. at 694, 104 S. Ct. at 2068. A reasonable probability is
a probability sufficient to undermine confidence in the outcome. Id.
The ultimate focus of our inquiry must be on the fundamental fairness of the
proceeding whose result is being challenged. Id. at 697, 104 S. Ct. at
2070.
B. Biffel Received Effective Assistance of Counsel
Biffel presents four separate alleged instances of deficient performance by
his trial counsel. First, he claims that his counsel's performance was deficient
when he failed to object to the "erroneous jury charge whereby the jury was
improperly authorized to convict on theories for which the evidence was legally
insufficient." Our disposition of points one, two, three, and four dispose
of this contention. We have held that the evidence is legally sufficient to
support Biffel's conviction under either paragraph three or four of the
indictment. We hold that counsel's failure to object to the charge on this basis
did not constitute deficient performance under Strickland's first
prong.
Next, Biffel complains that trial counsel's performance in failing to object
to the trial court's use of a general verdict form in the charge was deficient.
He surmises that "[a] single form makes it impossible to know of what
charge the jury convicted Appellant." Pursuant to article 37.07 of the
Texas Code of Criminal Procedure, the verdict in every criminal case must be
general. Tex. Code Crim. Proc. Ann. art. 37.07 (Vernon 1981). The charge also
distinctly set forth the law in compliance with article 36.14 of the Texas Code
of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon Supp.
2003). Additionally, because the indictment alleged two different ways of
committing the same offense, a general verdict was proper. See Aguirre v.
State, 732 S.W.2d 320, 326 (Tex. Crim. App. [Panel Op.] 1982) (op. on reh'g).
Accordingly, trial counsel's failure to object to the general verdict form did
not constitute deficient performance under Strickland's first prong.
Biffel further complains that trial counsel's performance in failing to
object to the application paragraph of the charge constituted deficient
performance. Under a disjunctive reading of the charge, trial counsel's failure
to object does not constitute deficient performance because the charge provided
for a choice between two valid theories supporting Biffel's conviction. See
Ex Parte Drinkert, 821 S.W.2d at 953. Under a conjunctive reading of the
application paragraph of the charge, trial counsel may have decided in the
exercise of trial strategy not to object because that construction of the charge
imposed a higher burden on the State. The strong presumption that trial counsel
rendered adequate assistance is not overcome by the absence of objection here. Strickland,
466 U.S. at 690, 104 S. Ct. at 2066. Trial counsel's failure to object did not
constitute deficient performance under Strickland's first prong.
Finally, Biffel complains trial counsel neglected to adequately prepare for
trial, to employ a reasonable trial strategy, and to call appropriate witnesses.
Biffel agrees that these allegations of ineffective assistance of counsel are
not "firmly founded in the record." See Thompson, 9 S.W.3d at
814. The record in the case at bar is silent as to these alleged performance
deficiencies. No record at all exists of counsel's trial strategy. Therefore, we
must hold that Biffel has failed to rebut the presumption that trial counsel's
decisions were reasonable. See Strickland, 466 U.S. at 699, 104 S. Ct.
at 2071; Thompson, 9 S.W.3d at 808 (emphasizing that failure to make
the required showing of deficient performance defeats the ineffectiveness
claim). We overrule Biffel's fifth point.
VI. Conclusion
Having overruled each of Biffel's points, we affirm the trial court's
judgment.

 
                                                           SUE
WALKER
                                                           JUSTICE

PANEL B: HOLMAN, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
DELIVERED: June 26, 2003