Herbert Lee GUILLORY, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–95–138 CR.

Court of Appeals of Texas, Beaumont.

Submitted Sept. 18, 1997.

Decided Oct. 15, 1997.

---

15. *See* former TEX.R.APP. P. 84.

136

Ed Lieck, Beaumont, Stephen C. Taylor, Galveston, for appellant.

Tom Maness, Criminal District Attorney, David Barlow, Assistant Criminal District Attorney, Beaumont, for State.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

1. References to Tex.Code Crim. Proc. Ann. art. 37.07 (Vernon Supp.1993) are to the version in

**OPINION**

STOVER, Justice.

A jury convicted appellant Herbert Guillory of sexual assault and assessed his punishment at forty-three years in the Texas Department of Criminal Justice—Institutional Division. We affirm that conviction.

In a single point of error, appellant contends the trial court erred in improperly charging the jury on parole at the punishment stage of the trial. The portion of the charge complained of is set out below:

> Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the *sentence imposed* through the award of good conduct time.

(emphasis added). As appellant points out, a jury instruction informing the jury of the effect of good conduct time and eligibility for parole was previously held unconstitutional in *Rose v. State,* 752 S.W.2d 529 (Tex.Crim.App. 1987). However, appellant also acknowledges that on November 7, 1989, Texas voters approved a constitutional amendment permitting the trial court to include instructions on the effects of parole laws in jury charges. Tex. Const. art. IV, § 11(a) (amended 1989). Pursuant to this constitutional grant of authority, the Texas Legislature re-enacted Tex.Code Crim. Proc. Ann. art. 37.07 § 4 (Vernon Supp.1993), part of which reads as follows:

> Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the *period of incarceration imposed* through the award of good conduct time.[1]

(emphasis added). In *Oakley v. State,* 830 S.W.2d 107, 110–11 (Tex.Crim.App.1992), the Texas Court of Criminal Appeals found the new statute to be constitutional. Since the constitutional amendment and statute took effect before Guillory committed the offense in question, the issue in the instant case is not a *Rose* error. The new statute, allowing the jury to be informed of the effects of parole law, is applicable.

effect at the time of the offense.

■ Because TEX. CONST. art. IV, § 11(a) has resolved the issue of the constitutionality of art. 37.04, § 4 by authorizing the trial court to inform juries about the effect of good conduct time and eligibility for parole, it is not error for a trial court to so instruct the jury. *Gamboa v. State*, 822 S.W.2d 328, 331 (Tex.App.—Beaumont 1992, pet. ref'd). However, a resolution of the issue of constitutionality does not permit a trial court to erroneously inform a jury of the effect of parole and good conduct time. That is what occurred in the instant case. The complained-of portion of the court's charge is not the same as the statutory version. As demonstrated in the emphasized portions quoted above, the phrase "sentence imposed" is used in place of "period of incarceration imposed." The trial court's version informs the jury at the outset that the term of sentence imposed may be lessened by an award of good conduct. That is an incorrect statement of the law. *Id.* Thus, the charge given to the jury does not comply with the statutory version in art. 37.07 § 4(c). Consequently, we hold the trial court erred in using the phrase "sentence imposed" instead of the statutorily mandated phrase "period of incarceration." *Id.*

■ Appellant urges this court to apply the harm analysis set out in TEX.R.APP. P. 81(b)(2), the standard used by the Court of Criminal Appeals in *Rose*. We decline to do so, since we do not believe the error implicates rights flowing from either the United States or Texas Constitutions; furthermore, appellant does not urge any constitutional violations. Because constitutional error is not involved in the charge error, the test prescribed in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on reh'g) applies. Under *Almanza*, "if the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is 'calculated to injure the rights of the defendant,' which means no more than that there must be *some* harm to the accused from the error." *Id.* However, the record in the instant case reveals no objection to the instruction.[2] Therefore, we must decide

whether the error was so egregious and created such harm that the accused has not had a fair and impartial trial. *Id.* In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.; Love v. State*, 909 S.W.2d 930, 935 (Tex.App.—El Paso 1995, pet. ref'd).

In the instant case, the trial court instructed the jury as follows:

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

Instructions similar to these have been regarded by the courts as curative and mitigating factors to consider when determining whether the giving of parole law instruction caused harm to an appellant. *Love*, 909 S.W.2d at 935; *Roberts v. State*, 849 S.W.2d 407, 410 (Tex.App.—Fort Worth 1993, pet. ref'd); *Grigsby v. State*, 833 S.W.2d 573, 576 (Tex.App.—Dallas 1992, pet. ref'd). It is presumed the jury followed the trial judge's curative instruction regarding the manner in which the parole law may be applied to an accused. *Love*, 909 S.W.2d at 935; *Myres v. State*, 866 S.W.2d 673, 674 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd). Absent indications to the contrary, this presumption prevails. *Love*, 909 S.W.2d at 935.

The punishment of forty-three years received by appellant is midway in the range of

---

2. In our earlier decision in *Gamboa v. State*, 822 S.W.2d 328, 330 (Tex.App.—Beaumont 1992, pet. ref'd), the appellant objected to similar

wording in the charge; the trial court overruled the objection. In the instant case, appellant did not object.

a possible punishment of twenty-five to ninety-nine years; whereas the State asked for sixty years, the appellant requested twenty-five. The sentence, as well as the jury instructions, mitigates against any claim of egregious harm.

There is likewise no harm demonstrated in any comments made by the State before the jury. During voir dire of the jury, opening and closing argument in the guilt/innocence phase of the trial, and during jury argument in the punishment phase, the State made no mention of parole law or the effect of good conduct time and eligibility for parole. The State's emphasis was on appellant's five prior felony convictions.

The evidence presented at trial also belies any indication of egregious harm. Two persons testified they heard yelling and banging on the common wall shared by the victim's apartment and her neighbor's apartment. The complainant told both persons she had been raped by appellant. Appellant was seen leaving the victim's apartment on the night in question by the two witnesses. During his investigation of the sexual assault, Officer Washburn noticed slight swelling around the complainant's eyes. No pictures were taken, because the officer did not believe they would show up on film. Officer Washburn and the victim went to St. Mary Hospital where a physician examined her and took samples, which revealed the presence of semen in the vagina.

The victim testified to the events which occurred on the night of June 30, 1993. According to her testimony, Guillory, who was visiting at her apartment, became angry when she told him she could not have sex with him because she had just gotten out of the hospital. She admitted she and Guillory had sex in the past, but they had broken up. Her description of the incident reveals that appellant grabbed her, threw her on the floor, and sat on her chest. He choked her, hit her in the face, threw her on the bed, and engaged in sexual intercourse with her against her will. Emma Swan, appellant's sister, testified that appellant and the victim were together at Swan's house for a few hours on the evening of the sexual assault. According to her testimony, when appellant

and the victim left her house, "they was hugged up" and kissing. Ms. Swan stated she did not know what happened after that.

The state of the evidence reveals the victim's graphic description of the sexual assault, neighbors' testimony of yelling and banging on the apartment wall the night of the incident and the victim's telling them she had been raped by Guillory, Officer Washburn's testimony of slight swelling around the victim's eyes, and evidence of semen from a laboratory test.

Based on the jury charge and certain mitigating instructions contained therein, the state of the evidence, and the argument of counsel, we conclude the error in the jury instruction was not egregious. It did not create such harm that the accused did not have a fair and impartial trial. Appellant's sole point of error is overruled. The judgment of the trial court is affirmed.

AFFIRMED.