Bobby Lee Biffel v. The State of Texas

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-01-478-CR

BOBBY LEE BIFFEL APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

OPINION

------------

I.  Introduction

A jury convicted Appellant Bobby Lee Biffel (“Biffel”) of murder and assessed his punishment at 48 years’ confinement.  In five points, Biffel challenges the legal sufficiency of the evidence to support his conviction, alleges that the trial court committed reversible error in the jury charge, and complains that he was denied effective assistance of counsel.  We will affirm.

II.  Background Facts

Biffel and Johnny Ochoa, the victim, were engaged in a long-standing homosexual relationship.  On the evening of October 17, 1998, Biffel and his sixteen year-old brother, Jerry, went to Ochoa’s home.  As Jerry played a video game, Biffel and Ochoa went to Ochoa’s bedroom.  Biffel returned fifteen to twenty minutes later without Ochoa and told Jerry they had to go.  As they left, Jerry noticed stains that could have been blood on Biffel’s shirt.  Jerry testified that he did not know why they had to leave and that he thought it was unusual that he did not have a chance to say goodbye to Ochoa. 

Two days later, on October 19
th
, family members who had begun searching for Ochoa found him dead in his bedroom.  Ochoa was laying face up, clad only in a pair of boxer shorts, and his face was covered with another pair of bloody men’s boxer shorts.  The dried blood on the shorts suggested that they had been there for some time.  A substantial amount of blood surrounded Ochoa’s body, and some blood was spattered on the wall.  The doors and windows of Ochoa’s residence were locked, and no signs of forced entry existed.  No murder weapon was recovered. 

The medical examiner opined that Ochoa had been dead a minimum of eighteen to twenty-four hours and possibly as long as two and one-half days. The primary cause of Ochoa’s death was trauma from multiple blunt-force injuries to the head, but a stab wound to Ochoa’s neck contributed to his death.   When Jerry learned of Ochoa’s death, he asked Biffel if he had anything to do with Ochoa’s demise.  Biffel responded “yeah” and admitted that he had hit Ochoa.  Evidence established the existence of prior physical altercations between Biffel and Ochoa, some requiring police intervention.  Following one of these disturbances, Biffel told police that he thought Ochoa might “have a fixation on him.”  Following a different disturbance, Biffel mentioned to police that while he wanted to keep his relationship with Ochoa a secret, Ochoa did not share his desire for secrecy. 

III.  Legal
 
Sufficiency

A.  Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to 
the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia, 
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson, 
443 U.S. at 319, 99 S. Ct. at 2789.  When performing a legal sufficiency review, we may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and, thus, substituting our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).

B.  Point One

In his first point, Biffel complains that the evidence as to paragraph three of the indictment is legally insufficient to authorize a conviction for murder. Paragraph three of the indictment reads: 

Paragraph Three:  And it is further presented in and to said court that the said defendant in the County of Tarrant and State aforesaid on or about the 17
th
 Day of October, 1998, did then and there intentionally, with the intent to cause serious bodily injury to Johnny Ochoa, commit an act clearly dangerous to human life, namely, by cutting or stabbing Johnny Ochoa with a deadly weapon, to-wit: a knife, that in the manner of its use or intended use was capable of causing death or serious bodily injury, which caused the death of Johnny Ochoa.

Biffel argues that the evidence presented foreclosed the possibility that Ochoa’s death resulted from a stab wound, as alleged.  Biffel bases this assertion on an answer given by the medical examiner during the State’s case-in-chief.  When asked whether a blunt-force trauma to Ochoa’s head  could have caused his death, the medical examiner responded in the affirmative.  The medical examiner also testified, however, that the neck wound was capable of causing Ochoa’s death.  Finally, he explained, “We have a primary cause and contributing cause of death” those being the cerebral trauma and the stab wound, respectively.

An individual is responsible for a death if his or her actions contributed to the death in some manner.  
More v. State
, 692 S.W.2d 912, 919 (Tex. App.—Houston [14
th
 Dist.] 1985, pet. ref’d). This is so even if there were additional contributing causes.  
Id.
; 
see 
Tex. Penal Code Ann.
 § 6.04(a) (Vernon 2003).  It follows that the State is not required to prove beyond a reasonable doubt that the alleged act alone caused the death.  
More
, 692 S.W.2d at 919
.

Here, the jury could have found the essential elements of the crime beyond a reasonable doubt because there was some evidence that the stab wound to Ochoa’s neck was a contributing cause of his death and was possibly fatal even absent the blunt-force injuries to Ochoa’s head
.  
See
 
More, 
692 S.W.2d at 619; 
Tex. Penal Code Ann.
 § 6.04(a)
.  Thus, viewing the evidence in the light most favorable to the verdict, we hold that the evidence as to paragraph three of the indictment is legally sufficient to authorize Biffel’s conviction for murder.  We overrule Biffel’s first point.

C.  Point Two

In his second point, Biffel complains that the evidence as to paragraph four of the indictment is legally insufficient to authorize his conviction for murder.  Specifically, Biffel claims the State failed to present evidence that the grand jury used due diligence to ascertain the manner or means used to commit the murder.  Therefore he argues that the evidence is legally insufficient to show that he “[struck] Johnny Ochoa with an object unknown to the grand jury” as alleged in paragraph four of the indictment.

When an indictment alleges that the manner or means utilized to inflict an injury is unknown and the evidence at trial does not show what type of object was used, a prima facie showing exists that the object was unknown to the grand jury.  
Matson v. State
, 819 S.W.2d 839, 847 (Tex. Crim. App. 1991).  
If, however, evidence at trial shows what object was used to inflict the injury, an issue is raised with respect to whether the grand jury had information, when it handed down the indictment, as to the object used.  
Id.
  Only in such a case must the State prove that the grand jury did not know the manner or means of inflicting injury and that the grand jury used due diligence in its attempts to ascertain the manner or means.  
Id.
  

Paragraph four of the indictment reads:

Paragraph Four:  And it is further presented in an to said court that the said defendant in the County of Tarrant and State aforesaid on or about the 17
th
 day of October, 1998, did then and there intentionally, with the intent to cause serious bodily injury to Johnny Ochoa, commit an act clearly dangerous to human life, namely, by striking Johnny Ochoa with an object unknown to the grand jury, that in the manner of its use or intended use was capable of causing death or serious bodily injury, which caused the death of Johnny Ochoa. 

Biffel contends the following testimony by the medical examiner and the homicide detective shows the identity of the object so that the State was put to its burden of proving that the grand jury did not know the manner or means of inflicting injury and that the grand jury used due diligence in its attempts to ascertain the manner or means.
 The medical examiner testified:  

Q. [Prosecutor] When you performed this autopsy on October 19
th
, ‘98 -- October 20
th
, I’m sorry, did you have any idea what this object was other than the description you’ve just given the Grand Jury (sic)?  I’m sorry the jury.

A. [Krause] I had a most likely -- most likely object that I would be looking for, yes.  I mean I had some idea of what the investigators might be seeking. 

The homicide detective testified:

Q. [Prosecutor] And you didn’t find any type of a weapon that could have been used to inflict the blunt-force trauma injuries to Mr. Ochoa, did you?

A. [Brannan] We searched -- I have my opinion about what may have been the weapon, but no, sir, I cannot say as for a fact what was the weapon. 

Here, we need not determine whether the grand jury exercised due diligence in ascertaining the manner or means used to inflict Ochoa’s blunt-force injuries because the evidence at trial failed to show the identity of the object utilized.  The medical examiner’s testimony that he had an idea of the type of object investigators might be seeking does not identify the object.  
See, e.g., Armstrong v. State, 
958 S.W.2d 278,
 283 (Tex. App.—Amarillo 1997, pet. ref’d)
 (holding that “while some evidence in this case indicates the death weapon could have been a knife, we find after reviewing the testimony in its context, the exact type of blade causing the wounds could only be determined by speculation.  Therefore, we conclude, . . . the State did not have to prove due diligence on the part of the Grand Jury.
”
); 
McIntosh v. State,
 855 S.W.2d 753, 766 (Tex. App.—Dallas 1993, pet. ref’d) (op. on reh’g) (concluding that, “while the murder weapon could have been a knife,” and evidence was presented that showed decedent died of multiple stab wounds, “the exact description of the instrument was unknown” at trial).
  The closest the evidence comes to identifying the unknown object is the medical examiner’s testimony, b
ased on the nature and shape of the abrasions and skull fractures Ochoa suffered, describing the object as “a heavy cylinder that [sic] probably with a metal rectangular face with these little grooves like a gripping machine.” 
 This testimony, however, also falls short of sufficiently identifying the object so that the State is put to the burden of proving that the grand jury did not know the manner or means of inflicting injury and that the grand jury used due diligence in its attempts to ascertain the manner or means.  
See, e.g., Armstrong, 
958 S.W.2d at 
283; 
McIntosh,
 855 S.W.2d at 766.  Thus, viewing the evidence in the light most favorable to the verdict, we hold that the evidence is legally sufficient to support Biffel’s conviction for murder by striking Ochoa with an unknown object, as alleged in paragraph four of the indictment.  
Accordingly, we overrule Biffel’s second point.

D.  Point Three

In his third point, Biffel asserts that the evidence as a whole is legally insufficient to support the conviction.  He outlines a number of facts purportedly supporting his position, including that Jerry Biffel thought Ochoa was still alive when he and Biffel left Ochoa’s house on October 17
th
, and that Jerry heard no struggle
 although only a curtain separated Ochoa’s bedroom from the area where Jerry was playing a video game. 

We agree that these facts support Biffel’s position; however, many other facts support the jury’s verdict.  Some of the more significant facts include the following:  Biffel and Ochoa were engaged in a sexual relationship; prior physical altercations had occurred between Biffel and Ochoa, necessitating police intervention; Biffel told police Ochoa “had a fixation” on him; Biffel and Jerry were the last people to see Ochoa alive; Jerry saw stains that could have been blood on Biffel’s shirt when they left Ochoa’s house; when Jerry asked Biffel whether he had anything to do with Ochoa’s death, Biffel responded, “yeah”; and the medical examiner’s testimony concerning the time of death is consistent with Ochoa having been murdered on October 17
th
 when Jerry and Biffel were at his house.
  Viewing the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  
Jackson, 
443 U.S. at 319, 99 S. Ct. at 2789; 
Burden
, 55 S.W.3d at 612.  
We overrule Biffel’s third point.

IV.  Jury Charge Error

A.  Standard of Review

In his fourth point, Biffel alleges that the application paragraph of the trial court’s charge was fundamentally erroneous.  
Appellant lodged no objection to this alleged error in the court’s charge, so even assuming error, we will reverse only if the error was so egregious and created such harm that Biffel was deprived of a fair and impartial trial—in short, if the error constituted “egregious harm.” 
 Almanza v. State
, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh’g);
 see also 
Tex. Code Crim. Proc. Ann
. art. 36.19 (Vernon 1981); 
Hutch v. State
, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

In making this determination, “the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.”  
Almanza
, 686 S.W.2d at 171; 
see generally Hutch
, 922 S.W.2d at 172-74.  The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused.  
Almanza
, 686 S.W.2d at 174.  Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis.  
Ellison v. State
, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002); 
Hutch
, 922 S.W.2d at 171.

B.  Biffel Did Not Suffer Egregious Harm

Biffel contends that the charge’s application paragraph is erroneous because it is unclear whether the charges alleged in paragraphs three and four of the indictment were submitted disjunctively or conjunctively.  Specifically, Biffel challenges the following language in the charge:

Now if you find from the evidence beyond a reasonable doubt that on or about the 17
th
 day of October, 1998, in Tarrant County, Texas, the defendant, Bobby Lee Biffel, did then and there intentionally, with the intent to cause serious bodily injury to Johnny Ochoa, commit an act clearly dangerous to human life, namely, by cutting or stabbing Johnny Ochoa with a deadly weapon, to-wit: a knife, that in the manner of its use or intended use was capable of causing death or serious bodily injury, which caused the death of Johnny Ochoa; 
or if you further find
 from the evidence beyond a reasonable doubt that on or about the 17
th
 day of October, 1998, in Tarrant County, Texas, the defendant, Bobby Lee Biffel, did then and there intentionally, with the intent to cause serious bodily injury to Johnny Ochoa, commit an act clearly dangerous to human life, namely, by striking Johnny Ochoa with an object unknown to the grand jury, that in the manner of its use or intended use was capable of causing death or serious bodily injury, which caused the death of Johnny Ochoa, then you will find the defendant guilty of murder, as charged in the indictment.  [Emphasis added.]

Biffel first questions whether the submission is disjunctive.  While the wording “or if you further find” did complicate matters somewhat, it is clear that the two theories were submitted disjunctively because of the use of the word “or.”  
See Carrion v. State, 
802 S.W.2d 83, 90 (Tex. App.—Austin 1990, no pet.) (mentioning that it is not error for the trial court to charge the jury by the disjunctive “or,” rather than by the conjunctive “and” in certain situations). “Or” means a choice between two alternatives and should not be ignored simply because it has been followed with “if you further find.”  In examining the phrase, it appears that the alleged error could have been avoided by excluding the word “further.”  We conclude that a disjunctive interpretation of the charge is proper.

Next, assuming this submission was disjunctive, Biffel questions which theory the jury based its decision on and concludes that “[i]t is impossible to tell.”  Biffel contends that reversal is required because it is not clear which theory of murder formed the basis for the jury’s general guilty verdict.  Biffel cites 
Ex Parte Drinkert
, 821 S.W.2d 953 (Tex. Crim. App. 1991).  
Drinkert
 held that when a jury charge contains alternative theories of liability, one of which is invalid, and when it is impossible to tell which theory the jury relied upon to convict, then the court will not assume that the jury relied on the valid theory. 
Drinkert
, 821 S.W.2d at 955.  Here, however, unlike 
Drinkert
, both of the theories submitted to the jury are valid.  We have held that the evidence is legally sufficient to support Biffel’s conviction under either paragraph three or four of the indictment.  The jury here could properly rely on either theory to convict Biffel.  
Drinkert
 is therefore inapplicable.

In the alternative, Biffel contends the application paragraph charged the jury in the conjunctive—requiring the jury to find he murdered Ochoa both by stabbing him with a knife and by striking him with an object unknown to the Grand Jury.  Biffel argues that Ochoa could not be murdered twice, so the jury could not have found him guilty under the application charge given.  The State points out, however, that if the charge can be construed conjunctively, it 
increased
 the State’s burden.  Accordingly, the State argues that Biffel was not egregiously harmed by the purported conjunctive submission because it increased the State’s burden.  
Cf. Robbins v. State,
 716 S.W.2d 117, 118 (Tex. App.—El Paso 1986, no pet.) (holding that an instruction which lowered the State’s burden of proof constituted reversible error).  
The State contends that Biffel can be, and was under a conjunctive interpretation of the application charge, charged and convicted of murdering Ochoa by two different manner and means.

Applying the 
Almanza
 egregious harm standard, we cannot conclude that the error in the application paragraph of the court’s charge, if any, affected the “very basis of the case” or that Biffel failed to receive a fair and impartial trial. 
See Batiste v. State
, 73 S.W.3d 402, 407 (Tex. App.—Dallas 2002, no pet.).  This present situation is not analogous to nor does it compare in severity to other charge problems, such as where an incorrect statement of the law is given or an omission exists.  
See, e.g.,
 
Guillory v. State
, 956 S.W.2d 135, 137 (Tex. App.—Beaumont 1997, no pet.) (holding that an incorrect statement of the law, while error, did not amount to egregious harm); 
 Simms v. State
, 905 S.W.2d 720, 724 (Tex. App.—Texarkana 1995, no pet.) (concluding that, even though it was error not to include an alternative correctional facility in the charge, appellant nevertheless suffered no egregious harm resulting from such error).  
Having determined that the error, if any, in the application paragraph of the charge does not meet 
Almanza
’s egregious harm standard, we overrule Biffel’s fourth point.

V.  Ineffective Assistance of Counsel

A.  Standard of Review

In his fifth point, Biffel complains he was deprived of effective assistance of counsel.  
We apply a two-pronged test to ineffective assistance of counsel claims.  
Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); 
Thompson v. State
, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  First, appellant must show that 
his counsel's performance was deficient; second, appellant must show the deficient performance prejudiced the defense. 
Strickland
, 466 U.S. at 687, 104 S. Ct. at 2064. 

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.  
Thompson
, 9 S.W.3d at 813.  The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.  
Strickland
, 466 U.S. at 688-89, 104 S. Ct. at 2065.  “[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.”  
Id. 
at 690, 104 S. Ct. at 2066.  An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.  
Thompson
, 9 S.W.3d at 814.  Our scrutiny of counsel's performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight. 
Strickland
, 466 U.S. at 689, 104 S. Ct. at 2065.

The second prong of 
Strickland
 requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable.  
Id. 
at 687, 104 S. Ct. at 2064.  In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  
Id.
 at 694, 104 S. Ct. at 2068.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  
Id.
  The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.  
Id.
 at 697, 104 S. Ct. at 2070.

B.  Biffel Received Effective Assistance of Counsel

Biffel presents four separate alleged instances of deficient performance by his trial counsel.  First, he claims that his counsel’s performance was deficient when he failed to object to the “erroneous jury charge whereby the jury was improperly authorized to convict on theories for which the evidence was legally insufficient.”  Our disposition of points one, two, three, and four dispose of this contention.  We have held that the evidence is legally sufficient to support Biffel’s conviction under either paragraph three or four of the indictment.  We hold that counsel’s failure to object to the charge on this basis did not constitute deficient performance under 
Strickland
’s first prong.

Next, Biffel complains that trial counsel’s performance in failing to object to the trial court’s use of a general verdict form in the charge was deficient.  He surmises that “[a] single form makes it impossible to know of what charge the jury convicted Appellant.” 
 Pursuant to article 37.07 of the Texas Code of Criminal Procedure, the verdict in every criminal case must be general.  
Tex. Code Crim. Proc. Ann.
 art. 37.07 (Vernon 1981).  The charge also distinctly set forth the law in compliance with article 36.14 of the Texas Code of Criminal Procedure.
  Tex. Code Crim. Proc. Ann.
 art. 36.14 (Vernon Supp. 2003). Additionally, because the indictment alleged two different ways of committing the same offense, a general verdict was proper.  
See Aguirre v. State,
 732 S.W.2d 320, 326 (Tex. Crim. App. [Panel Op.] 1982) (op. on reh’g). Accordingly, trial counsel’s failure to object to the general verdict form did not constitute deficient performance under 
Strickland
’s first prong.

Biffel further complains that trial counsel’s performance in failing to object to the application paragraph of the charge constituted deficient performance. Under a disjunctive reading of the charge, trial counsel’s failure to object does not constitute deficient performance because 
the charge provided for a choice between two valid theories supporting Biffel’s conviction.  
See Ex Parte Drinkert
, 821 S.W.2d at 953.
  Under a conjunctive reading of the application paragraph of the charge, trial counsel may have decided in the exercise of trial strategy not to object because that construction of the charge imposed a higher burden on the State.  The strong presumption that trial counsel rendered adequate assistance is not overcome by the absence of objection here. 
Strickland
, 466 U.S. at 690, 104 S. Ct. at 2066.  Trial counsel’s failure to object did not constitute deficient performance under 
Strickland’s
 first prong.

Finally, Biffel complains trial counsel neglected to adequately prepare for trial, to employ a reasonable trial strategy, and to call appropriate witnesses. Biffel agrees that these allegations of ineffective assistance of counsel are not “firmly founded in the record.”  
See Thompson
, 9 S.W.3d at 814.  The record in the case at bar is silent as to these alleged performance deficiencies.  No record at all exists of counsel’s trial strategy.  Therefore, we must hold that Biffel has failed to rebut the presumption that trial counsel’s decisions were reasonable. 
 See Strickland
, 466  U.S. at 699, 104 S. Ct. at 2071; 
Thompson
, 9 S.W.3d at 808 (emphasizing that 
failure to make the required showing of deficient performance defeats the ineffectiveness claim).  We overrule Biffel’s fifth point. 

VI.  Conclusion

Having overruled each of Biffel’s points, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL B: HOLMAN, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED: 
June 26, 2003