NO. 07-10-00161-CR; 07-10-00162-CR; 07-10-00163-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 27, 2012

---

PAULIN SOTO SORIA, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

---

FROM THE 31ST DISTRICT COURT OF GRAY COUNTY;

NO. 7619, 7620, 7621; HONORABLE STEVEN RAY EMMERT, JUDGE

---

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**OPINION**

Appellant Paulin Soto Soria appeals from his jury convictions of aggravated sexual assault of a child and the resulting sentences of ninety-nine years of imprisonment. Appellant challenges his convictions through four points of error. We will affirm.

Background

Appellant was charged with sexual assault of his daughter F.S.,[1] in three separate indictments, each alleging a different manner of assault. One indictment

---

[1] *See* Tex. Penal Code Ann. art. 22.021(a)(2)(B) (West 2010).

alleged vaginal penetration, another alleged anal penetration, and the third, contact between the child's mouth and appellant's sexual organ. Appellant plead not guilty and the three causes were tried together.

Appellant does not challenge the sufficiency of the evidence to support his convictions. Accordingly, we will relate only those facts necessary to our disposition of appellant's four points of error.

F.S. is one of appellant's four children, two boys and two girls. Appellant's wife, the mother of the four children, died in 1996 when F.S. was four years old. F.S. was seventeen years old at the time of trial. She testified her father began sexually assaulting her when she was four, not long after her mother died, and continued doing so until she was eleven. She gave graphic descriptions of instances of vaginal and anal intercourse, and of appellant's requiring oral sex of her. According to F.S.'s testimony, he assaulted her often, eventually two or three times a week. Appellant did not sexually assault F.S.'s younger sister, nor did any of the other children witness any of his assaults on F.S.

Testimony showed appellant's strong control over the household and his children. Both F.S. and her sister testified that appellant treated them differently, favoring F.S. Her sister further described F.S. as "fit," "thin" and "beautiful." F.S. testified appellant often told her she reminded him of her mother. At the same time, F.S. testified that, as the older daughter, she was made to feel responsible for her sister, to the point of being punished for her sister's misdeeds. The "punishment," she testified, on at least one occasion involved "rape."

2

F.S. first told an aunt, her mother's sister, of appellant's assaults in 2004 when she was eight. She and the other children were removed from the home and lived with their grandparents for three weeks. The aunt testified appellant told her then that he had "only touched" F.S. F.S. recanted her story to Child Protective Services (CPS), however, and the children were returned to their father. F.S. again made an outcry to the same aunt two years later, leading to interviews of all four children at The Bridge, an Amarillo child advocacy center, and appellant's January 2007 indictment. The case was tried in March 2010.

Appellant's position before the jury was that F.S. fabricated her accusations against him. He told the jury in his opening statement that all the accusations ultimately were founded on statements made by F.S., and that "this case doesn't exist except in the mind of [F.S.]"

Analysis

Admission of Extraneous Wrongs or Acts

In appellant's first point of error, he challenges the trial court's admission of evidence of extraneous bad acts that came through the testimony of F.S., her sister, and her brother. They testified to appellant's harsh physical discipline, sometimes described as "beating" his children with a belt buckle. A psychologist testified to F.S.'s statements to her that appellant had a temper and beat the children as punishment. F.S.'s sister further testified that appellant withheld food from her out of concern for her weight, and she "had to steal food from the kitchen" to avoid his punishment.

Another witness recalled her impression that the children "were thin" when she met them. She also testified she went to the house in which appellant lived with the

3

children, and found it "dark" with "lots of stuff, lots of stuff everywhere." She referred specifically to "lots of can goods in the kitchen," and also referred to "piles of can goods."

Lastly, appellant complains that the trial court permitted the children's aunt to testify appellant and his wife had a "bad" relationship.

The admission of extraneous bad conduct evidence is reviewed for an abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex.Crim.App. 2005). If the decision to admit evidence is within the "zone of reasonable disagreement," there is no abuse of discretion in its admission. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (op. on reh'g); *see Osbourn v. State*, 92 S.W.3d 531, 537 (Tex.Crim.App. 2002) (no abuse of discretion if decision on admission of evidence is supported by the record).

Appellant relies on evidence rules 403 and 404(b). Tex. R. Evid. 403, 404(b). The State argues some of the extraneous acts of which appellant complains were admissible under article 38.37 of the Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 38.37, § 2 (West 2012). Appellant's argument does not address article 38.37.

Under Rule 404(b), evidence of other crimes, wrongs, or bad acts is inadmissible if it is offered to prove the character of a person in order to show action in conformity therewith, though it may be admissible for other purposes. TEX. R. EVID. 404(b). Article

38.37 of the Code of Criminal Procedure, however, applied to appellant's prosecution.[2]

Article 38.37, section 2, provides:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:
>
> (1) the state of mind of the defendant and the child; and
> (2) the previous and subsequent relationship between the defendant and the child.
>
> Tex. Code Crim. Proc. Ann. art. 38.37, § 2 (West 2012).

Evidence that is admissible under article 38.37 may excluded, however, under evidence rule 403, if its probative value is substantially outweighed by the danger of unfair prejudice or confusion of the issues. Tex. R. Evid. 403; *Hitt v. State,* 53 S.W.3d 697, 706 (Tex.App.—Austin 2001, pet. ref'd) (trial court required to conduct rule 403 balancing test even when evidence relevant under article 38.37); *see Montgomery,* 810 S.W.2d at 389 (stating the presumption relevant evidence is more probative than prejudicial). In considering a rule 403 challenge, courts must balance (1) the inherent probative force of the evidence -- that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation, with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, commonly, an emotional one, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force

---

[2] Among the proceedings to which article 38.37 applies are those in the prosecution of offenses under Penal Code Chapter 22 committed against a child under 17 years of age. Tex. Code Crim. Proc. Ann. art. 38.37, § 1 (West 2012).

of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex.Crim.App. 2006). We should reverse the trial court's balancing determination "rarely and only after a clear abuse of discretion." *Montgomery*, 810 S.W.2d at 392 (quoting *United States v. Maggitt*, 784 F.2d 590, 597 (5th Cir. 1986)). In addition, because rule 403 permits the exclusion of admittedly probative evidence, "it is a remedy that should be used sparingly, especially in 'he said, she said' sexual-molestation cases that must be resolved solely on the basis of the testimony of the complainant and the defendant." *Hammer v. State*, 296 S.W.3d 555, 568 (Tex.Crim.App. 2009).

With regard to the evidence concerning appellant's discipline and treatment of F.S., after review of the record, we find the trial court reasonably could have regarded the testimony as bearing on his relationship with her, and thus admissible under article 38.37. *See McCulloch v. State*, 39 S.W.3d 678, 681 (Tex.App.--Beaumont 2001, pet. ref'd) (holding similar evidence admissible under article 38.37); *Conrad v. State*, 10 S.W.3d 43, 46 (Tex.App.—Texarkana 1999, pet. ref'd) (finding evidence of defendant's extraneous mistreatment of child victim admissible under article 38.37). *See also Ernst v. State*, 971 S.W.2d 698, 700 (Tex.App.—Austin 1998, no pet.) (noting authority that observes that wording of article 38.37 is "strongly tipped in favor of admissibility"); *Flores v. State,* No. 07-06-0340-CR- 07-06-0343-CR, 2008 Tex.App. LEXIS 6580, at *5 (Tex.App.—Amarillo Aug. 27, 2008, no pet.) (mem. op., not designated for publication) (finding evidence defendant engaged in sexual contact with three great-nephews admissible under article 38.37). As the cited cases note, such evidence is relevant to

6

explain how such an unnatural relationship came to exist between a father and his daughter, involving actions the jury otherwise may have considered "illogical and implausible." *McCullough,* 39 S.W.3d at 681, *citing Ernst,* 971 S.W.2d at 700-01, *quoting Johns v. State,* 236 S.W.2d 820, 823 (1951).

We also see no abuse of discretion in the trial court's admission of testimony of appellant's harsh discipline of his other children.  The children's aunt testified appellant's children feared him.  Courts have found such evidence admissible over a rule 404(b) objection to explain why a victim of sexual assault did not make a prompt outcry.  *See Brown v. State,* 657 S.W.2d 117, 119 (Tex.Crim.App. 1983) (victim's testimony defendant threatened to kill her family admissible to show reason for delayed outcry); *Ayala v. State,* No. 02-06-0110-CR, 2007 Tex.App. LEXIS 3625 (Tex.App.—Fort Worth May 10, 2007, pet. ref'd) (mem. op., not designated for publication) (evidence defendant beat victim's mother admissible over rule 404 objection for same reason).  *See also Mayer v. State,* No. 02-07-0293-CR, 2008 Tex.App. LEXIS 9483 (Tex.App.—Fort Worth Dec. 18, 2008, pet. ref'd) (mem. op., not designated for publication) (in sexual assault case, finding no abuse of discretion in admission under article 38.37 of evidence of violent act against victim's brother committed in front of victim, as bearing on defendant's relationship with victim).

In its evaluation under rule 403 of the relative probative value and prejudicial nature of the evidence of appellant's treatment of F.S. and his other children, the trial court reasonably could have concluded such evidence served to explain to the jury how appellant perpetrated frequent sexual assaults on his young daughter over a period of years, continuing to do so even after his other children and members of their extended

family were told of his actions, and had significant probative value for that purpose. *See McCullough,* 39 S.W.3d at 681. The trial court also reasonably could have determined the State had a significant need for such evidence to explain the relationships that enabled appellant's assaults over that time, and could have considered there was little risk the evidence would confuse or distract the jury, suggest a decision on an improper basis or occupy an inordinate place among the evidence. *Gigliobianco*, 210 S.W.3d at 641-42. The court did not abuse its discretion by overruling appellant's rule 403 challenge to the evidence of harsh discipline imposed on the four children.

We do agree with appellant that the trial court erred by allowing the children's aunt to testify appellant and his wife had a bad relationship. The State's need for such testimony is anything but apparent on this record, and any probative value it had to the issues before the jury was substantially outweighed by the danger of confusing and distracting them from the main issues.[3] *Gigliobianco*, 210 S.W.3d at 641-42.

Erroneous admission of extraneous act testimony constitutes non-constitutional error subject to a harm analysis under appellate procedure rule 44.2(b). Tex. R. App. P. 44.2(b); *Casey v. State,* 215 S.W.3d 870, 885 (Tex.Crim.App. 2007). Rule 44.2(b) requires that we disregard an error "that does not affect substantial rights." Tex. R. App. P. 44.2(b). Thus, to show harm, the error in admitting the evidence must have had a substantial and injurious effect in determining the jury's verdict. *Hernandez v. State*, 176 S.W.3d 821, 824 (Tex.Crim.App. 2005). A substantial right is not affected by the

---

[3] At a bench conference, the State told the court it would develop the relevance of the line of questioning, but its further questioning, inquiring about surgery the wife had before her death, did nothing but deepen the confusing nature of the inquiry.

8

erroneous admission of evidence "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex.Crim.App. 2002). Here, the evidence pertaining to the "bad" relationship between appellant and his wife was collateral to the main issue in the case, which was the credibility of F.S.'s testimony of appellant's assaults. The State explored the relationship with only one witness, the aunt, and did not repeatedly mention the testimony. Having examined the entire record, we are satisfied the testimony did not have a substantial and injurious effect on the jury's verdict. Its erroneous admission was not harmful.

Lastly, we address the testimony concerning the conditions the witness observed when she came to the residence appellant and his children occupied. As noted, she found the home "dark" with "lots of stuff, lots of stuff everywhere," referring to "can goods in the kitchen." She also once said that, to her, the children seemed "thin" when she met them. The State argues her statements did not describe "bad acts" and were not subject to exclusion under rule 404(b). Extraneous offense evidence is that showing a crime or bad act and showing the defendant was connected to it. *Castillo v. State*, 59 S.W.3d 357, 361 (Tex.App.—Dallas 2001, pet. ref'd), *citing Lockhart v. State*, 847 S.W.2d 568, 573 (Tex.Crim.App. 1992). The evidence must include some sort of extraneous conduct on behalf of the defendant forming part of the alleged extraneous offense. *Castillo*, 59 S.W.3d at 361, *citing Moreno v. State*, 858 S.W.2d 453, 463 (Tex.Crim.App. 1993). We agree with the State that the trial court reasonably could have regarded the witness's testimony concerning the conditions she observed in the

residence and her impression the children were "thin" did not show conduct on behalf of appellant. For that reason, the trial court did not abuse its discretion by admitting it.

We overrule appellant's first issue.

Victim's Presence in Courtroom at Trial

In appellant's second point of error, he challenges the trial court's ruling, over appellant's objection, allowing F.S. to remain in the courtroom during the trial, despite his invocation of Rule of Evidence 614, commonly referred to simply as "the rule." Rule of Evidence 614 is designed to prevent witnesses from altering their testimony, consciously or not, based on other witnesses' testimony. *Webb v. State*, 766 S.W.2d 236, 239 (Tex.Crim.App. 1989).

Rule of Evidence 614 provides for exclusion of witnesses from the court room "so that they cannot hear the testimony of other witnesses," but states that it does not authorize exclusion of certain witnesses, among them "the victim in a criminal case, unless the victim is to testify and the court determines that the victim's testimony would be materially affected if the victim hears other testimony at the trial." Tex. R. Evid. 614.

The presence of the victim at trial of a criminal offense also is the subject of article 36.03 of the Code of Criminal Procedure, enacted in 2001,[4] which reads, in relevant part:

---

[4] Article 36.03 was enacted as a part of 2001 legislation strengthening the ability of crime victims to participate in criminal justice proceedings. Acts 2001, 77th Leg., ch. 1034 (H.B. 1572), § 1 (effective September 1, 2001). Note that the statute also expanded the list of persons who, despite Rule 614, may be excluded from the courtroom only on the required findings to include a close relative of a deceased victim and the guardian of a victim.

10

(a)        Notwithstanding Rule 614, Texas Rules of Evidence, a court at the request of a party may order the exclusion of a witness who for the purposes of the prosecution is a victim, close relative of a deceased victim, or guardian of a victim only if the witness is to testify and the court determines that the testimony of the witness would be materially affected if the witness hears other testimony at the trial.

(b)        On the objection of the opposing party, the court may require the party requesting exclusion of a witness under Subsection (a) to make an offer of proof to justify the exclusion.

(c)        Subsection (a) does not limit the authority of the court on its own motion to exclude a witness or other person to maintain decorum in the courtroom.

Tex. Code Crim. Proc. Ann. art. 36.03 (West 2011).

We agree with the suggestion of the Texarkana court, applying Rule 614 in a 2000 opinion, that at trial the burden is on the party seeking to exclude the victim from the courtroom "to offer some basis to the court on which the court could determine that the victim's testimony would be materially affected by hearing testimony from the other witnesses." *Bunn v. State,* No. 06-99-00022-CR, 2000 Tex.App. LEXIS 1841, at *3-4 (Tex.App.—Texarkana March 23, 2000, no pet.) (mem. op., not designated for publication). And we think that burden is more clear under the language of article 36.03 stating the trial court, at the request of a party, may order the exclusion of the victim only if the victim is to testify and the court determines her testimony would be materially affected by hearing other testimony. The burden on the party seeking to exclude the victim from the courtroom is further emphasized by subsection (b) of article 36.03, specifically authorizing the trial court to require of that party an offer of proof justifying the victim's exclusion.

When appellant invoked "the rule" at the outset of trial, the district attorney asked that F.S., as the victim, be excused from the rule, and allowed to remain in the

courtroom. Appellant objected, asserting that victims are allowed to hear other witnesses testify only after completing their own testimony.[5] And, although appellant generally argued that testifying witnesses are excluded "so they don't hear each other['] testimony and try to match it up," appellant gave the court no basis for concluding that the testimony of F.S. would be materially affected if she heard other testimony.[6] In the absence of such a showing, the court did not abuse its discretion by refusing to exclude her from the courtroom.

We resolve appellant's second point of error against him.

---

[5] Appellant does not assert that position on appeal. Obviously, the danger that her testimony will be materially affected is greater if a victim is allowed to hear others testify before she takes the stand than if she is permitted to remain in the courtroom only after she has testified in the State's case-in-chief. *See Scott v. State,* No. 14-07-01048-CR, 2008 Tex.App. LEXIS 9142, at *22-23 (Tex.App.—Houston [14th Dist.] Dec. 4, 2008, pet. ref'd) (mem. op., not designated for publication); 1 Steven Goode *et al.*, Guide to the Texas Rules of Evidence, § 614.2 (3d ed. 2002) (both so noting). Equally obviously, however, the exemption of victims from the operation of Rule 614 is not limited to those who already have given their testimony for the State.

[6] On appeal, appellant points to instances in which he asserts F.S. "matched up" her testimony with that of previous witnesses whose testimony she heard. The State points out nothing in the record shows how F.S.'s testimony would have differed if she had not remained in the courtroom. *See Rivas v. State,* No. 13-05-601-CR, 2007 Tex.App. LEXIS 5623, at *34 (Tex.App.—Corpus Christi July 12, 2007, pet. ref'd) (mem. op., not designated for publication) (concluding relief was precluded when appellant failed to demonstrate how, if at all, the witness was influenced in her testimony by the testimony she heard, citing *Russell v. State,* 155 S.W.3d 176, 179 (Tex.Crim.App. 2005)). We further note that none of the instances of "matching up" appellant cites involve F.S.'s testimony describing the acts of sexual assault; all involve collateral matters. Because we have found no error in the trial court's ruling, however, we need not further address the State's contentions the error, if any, was harmless.

Improper Jury Charge on Parole Eligibility

In his third point of error, appellant raises an error in the court's charge on punishment, concerning appellant's eligibility for parole. Although the State opposed appellant's objection to the charge at trial, now on appeal it concedes the charge contained error.

The error is in the paragraphs required by section 4 of article 37.07 of the Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 37.07 (West 2012). Because the offenses of which appellant was convicted are "§ 3g" offenses, that is, offenses listed in section 3g(a)(1) of article 42.12 of the Code of Criminal Procedure, the court was required to give the instruction prescribed by section 4(a) of article 37.07. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(1)(E) (West 2012) (listing aggravated sexual assault under § 22.021, Penal Code); Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a) (West 2012) (prescribing penalty phase instruction for offenses listed in § 3g(a)(1)).

The specific error in the charge appears in the paragraph describing the defendant's eligibility for parole. The other paragraphs of the instruction prescribed in § 4(a) of article 37.07 were correctly stated in the charge. The prescribed instruction would have told the jury that, if sentenced to prison, appellant would be not eligible for parole until he served half the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time earned. Instead, the court instructed the jury with this sentence: "Under the law applicable in this case, if the Defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served plus any good conduct time earned equals one-half of the sentence imposed." In accordance with the prescribed instruction, the court followed that sentence with one

instructing the jury that "Eligibility for parole does not guarantee that parole will be granted."

Instead of understanding that appellant would be eligible for parole after serving the lesser of half his sentence or 30 years, without consideration of good conduct time, the jury was given to understand he would be eligible after serving half his sentence, taking any good conduct time into account. The charge thus contains two errors. The jury erroneously was told good conduct time could speed appellant's eligibility for parole and was not told that he would be eligible in 30 years without regard to good conduct time.

Although the State concedes the trial court erred in its charge, it argues appellant did not suffer harm requiring reversal. Because appellant timely objected to the erroneous charge, we must reverse his conviction if we find error was "calculated to injure the rights of defendant." *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App. 1985); *see Guillory v. State,* 956 S.W.2d 135, 137 (Tex. App.--Beaumont 1997, no pet.) (erroneous statements in jury charge do not rise to level of constitutional error). That means reversal is required if there was "some harm" to appellant from the error. *Ngo v. State,* 175 S.W.3d 738, 744 (Tex.Crim.App. 2005). We must find, however, that the harm was actual, not merely theoretical. *Almanza,* 686 S.W.2d at 174.

We assess the actual degree of harm in light of the entire jury charge**,** the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *Almanza,* 686 S.W.2d at 171; *Castaneda-Lerma v. State,* No. 04-07-

00479-CR, 2008 Tex.App. LEXIS 4629, at *5-6 (Tex.App.—San Antonio June 25, 2008, pet. ref'd) (mem. op., not designated for publication).

In our consideration of the entire charge on punishment, we balance the erroneous language telling the jury that parole eligibility would be affected by any good conduct time earned with the charge's other language bearing on good conduct time and parole. The charge properly told the jury that it was not to consider the extent to which good conduct time may be awarded to, or forfeited by, appellant, nor was it to consider the manner in which the parole law may be applied to him. Such language has been found "curative" of a similar charge error. *See Guevara v. State,* No. 14-97-00555-CR, 1999 Tex.App. LEXIS 6799, at *7-9 (Tex.App.—Houston [14[th] Dist.] Sept. 9, 1999, pet. ref'd) (mem. op., not designated for publication) (egregious harm analysis). *See also Igo v. State*, 210 S.W.3d 645, 647 (Tex.Crim.App. 2007); *Lee v. State,* No. 12-09-00221-CR, 2010 Tex.App. LEXIS 3526 (Tex.App.—Tyler May 12, 2010, pet. ref'd) (mem. op., not designated for publication); *Guillory,* 956 S.W.2d at 137 (all egregious harm analyses referring to such language as "curative").

Neither the State nor appellant's counsel mentioned parole or good time credit during their arguments to the jury. The arguments were brief, appellant's counsel emphasizing that appellant was a good provider for his family and that his parenthood had other good aspects. The State emphasized the effect of his sexual assaults on his children and other family members, and asked for the maximum imprisonment. The arguments of counsel thus did not exacerbate the erroneous parole instruction language, but neither did they serve to ameliorate the error.

15

The punishment evidence was brief and unremarkable. Appellant did not testify but presented his mother as a punishment witness to testify to his eligibility for probation. The State put F.S. and her sister back on the stand to describe, briefly, the effect of appellant's actions on their family. Both said they loved their father but both indicated he should be held accountable. As evidence bearing on punishment, however, it is difficult to overstate the seriousness of evidence that appellant engaged in a thorough-going sexual relationship with his daughter during years of her childhood, lied about it to a family member, then continued the assaults for two more years. The jury imposed the maximum sentence in each of the three cases, including the maximum fine. The court in *Guevara*, 1999 Tex.App. LEXIS 6799, at *9, noting the jury's decision in that case, supported by strong evidence, to punish the defendant to the fullest extent of the law, found that action "indicative that the jurors did not consider the impact of parole or good conduct time on the sentence." This record leads us to the same conclusion.

The seriousness and long-term nature of appellant's actions, the uncertainty of good conduct time, the presence of correct "curative" language in the charge and the lack of focus on parole in jury arguments support the conclusion appellant suffered no actual harm from the erroneous statement in the charge that good conduct time could affect his eligibility for parole. Accordingly, we find the error harmless and overrule appellant's third point of error.

Limitation of Cross-Examination of Victim Regarding Motive to Lie

Appellant's complaint in his last point of error is based in part on the same evidence of which he complained in his first point. He argues the State's evidence that

16

appellant harshly disciplined his children just as well could have indicated to the jury that F.S. had a motive to lie. He argues the court improperly disallowed his attempt to cross-examine F.S. on a matter relevant to her motive to lie, denying him his Sixth Amendment right of confrontation of the witnesses against him. U.S. CONST. amend. VI; *see Davis v. Alaska*, 415 U.S. 308, 315, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *Lopez v. State*, 18 S.W.3d 220, 222 (Tex.Crim.App. 2000) (both addressing confrontation right).

During cross-examination, counsel for appellant asked F.S., "Now, your sister…she had a sexual assault allegation against one of her friend's fathers; is that correct?" Before F.S. responded, the State objected and after hearing argument and a further objection, the trial court sustained the objections in a bench conference, stating "It's too far removed, too remote. You're trying to get the jury to speculate."

We will overrule appellant's point of error, for two reasons. The first relates to preservation of error. Because appellant sought to cross-examine F.S. regarding her knowledge of a specific event involving her sister, rather than on the general subject of his discipline as a motive for her to accuse him wrongly, preservation of his complaint required him to perfect an offer of proof. TEX. R. EVID. 103(a)(2); *Mays v. State*, 285 S.W.3d 884, 889 (Tex.Crim.App. 2009); *Garner v. State,* No. 05-10-00195-CR, 2011 Tex.App. LEXIS 5991, at *17-18 (Tex.App.—Dallas Aug. 2, 201, no pet.) (mem. op., not designated for publication) (citing *Virts v. State,* 739 S.W.2d 25, 29 (Tex.Crim.App. 1987)).

Offers of proof may take the form of questions-and-answers or a concise statement by counsel. TEX. R. EVID. 103(a)(2), (b); *Mays*, 285 S.W.3d at 889. If counsel

17

makes the offer by statement, it must include a reasonably specific summary of the proposed testimony. *Mays*, 285 S.W.3d at 890. The primary purpose of an offer of proof is to enable an appellate court to determine harmful error; a secondary purpose is to permit the trial judge to reconsider the ruling in light of the actual evidence. *Id*.

Appellant's counsel made an offer of proof after the trial court sustained the State's objection. He told the court the questions he sought to ask F.S. But, with one exception, he did not tell the court how he expected she would answer the questions. He said that if he were allowed to ask F.S., she would testify that her sister made accusations against a friend's father, and that the father was "removed from the home." The remainder of the offer consists of the questions counsel would then ask F.S., regarding whether that event "gave her the idea," to accuse her father and "get [him] out of the home" so she could obtain money her father had received from a settlement after her mother died; and whether she and her siblings decided to make the sexual assault allegation rather than kill their father as they had previously discussed. Because the offer of proof primarily described the questions counsel would have asked and did not provide the trial court, or this court, the answers counsel expected to receive, it does not provide the same information that a question-and-answer offer of proof would provide, and so does not provide us a basis to determine whether the trial court erred and if so whether it was harmful. *See Virts,* 739 S.W.2d at 29 (requirements of offer of proof).

Second, if we are mistaken regarding the sufficiency of the offer of proof to preserve error, we conclude the trial court's limitation on appellant's cross-examination did not violate his Sixth Amendment rights.

Texas courts generally provide great latitude in cross-examination to show any fact revealing "possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case [on trial]." *Hammer v. State*, PD-0786-08, 2009 Tex.Crim.App. LEXIS 513 (Tex.Crim.App. Apr. 8, 2009) (quoting *Davis*, 415 U.S. at 316). A defendant may cross-examine a witness, most importantly a prosecution witness, on any subject "reasonably calculated to expose a motive, bias or interest for the witness to testify." *Carroll v. State*, 916 S.W.2d 494, 497 (Tex.Crim.App. 1996).

Nonetheless, the trial court has discretion to impose reasonable limits on cross-examination, based on concerns such as harassment, prejudice, confusion of the issues, safety of the witness, or examination that is repetitive or only marginally relevant. *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674. Similarly, the court has "considerable discretion in determining how and when bias may be proved, and what collateral evidence is material for that purpose." *Ho v. State,* 171 S.W.3d 295, 304 (Tex.App.--Houston [14th Dist.] 2005, pet. ref'd) (*quoting Recer v. State*, 821 S.W.2d 715, 717 (Tex.App.—Houston [14th Dist.] 1991, no pet.)).

As the State noted in its objection, appellant's question related to an accusation made by F.S.'s sister against another man.[7] The trial court's remark suggests it found the question of no more than marginal relevance. We see no abuse of discretion in that

---

[7] No mention is made in the record as to whether the allegation of which appellant was inquiring was true or false. *Cf. Hammer*, 296 S.W.3d at 564 (addressing admissibility of evidence of victim's prior false accusation in sexual assault cases).

assessment. Further, the court could have concluded that injection of the sister's allegation into this case risked confusing the issues before the jury.

The court's restriction on cross-examination "does not violate the defendant's 'right to confront a witness as long as (1) the possible bias and motive of the State's witness is clear to the trier of fact and (2) the accused has otherwise been afforded an opportunity for a thorough and effective cross-examination.'" *Ho*, 171 S.W.3d at 304 (quoting *Stults v. State*, 23 S.W.3d 198, 204 (Tex.App.--Houston [14th Dist.] 2000, pet. ref'd)). The trial court reasonably could have considered both that appellant had been afforded the opportunity for thorough cross-examination, and that F.S.'s possible motive to accuse her father to escape her home life and obtain control of money received as a result of their mother's death had been made clear to the jury. Several witnesses, including F.S., testified to the harsh disciplinary practices of appellant and the children's desire to be out of his control. Further, appellant fully cross-examined the State's witnesses, including F.S., on every other aspect of the evidence. We overrule appellant's last point of error.

Having resolved each of appellant's points of error against him, we affirm the judgments of the trial court.

James T. Campbell
Justice

Do not publish.

20